UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Jean Paul Souliere, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | File No. 2:08-CV-40 |
| | : | |
| Robert Hofmann, David | : | |
| Boulanger, Mark Laliberte, | : | |
| Kevin Oddy, Fred | : | |
| Figueroa, Corrections | : | |
| Corporation of America, | : | |
| John Ferguson, Officer | : | |
| Turner, | : | |
|     Defendants. | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 12, 15 and 25)

Plaintiff Jean Paul Souliere, proceeding *pro se*, brings this action claiming that Vermont Department of Corrections ("DOC") officials denied him due process when they removed him from a DOC work camp. He also claims that, upon his transfer from Vermont to a privately-owned facility in Oklahoma, he was abused and otherwise treated in violation of his Eighth Amendment rights.

Pending before the Court are two motions to dismiss. The first, filed on behalf of the DOC, DOC Commissioner Robert Hofmann, work camp caseworker David Boulanger, prison caseworker Mark Laliberte, and DOC employee Kevin Oddy, seeks the dismissal of all claims relating to the work camp incident. The second motion pertains to events that took

place in Oklahoma, and includes both DOC defendants and individuals related to the Oklahoma facility.[1]

The defendants have set forth an array of defenses, including official capacity immunity, lack of personal involvement, and an argument that Souliere had no due process rights with respect to his removal from the work camp. The motions to dismiss are unopposed. For the reasons set forth below, I recommend that the Court GRANT the motions, and that this case be DISMISSED.

Factual Background

For the limited purpose of ruling on the motions to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Souliere alleges that he was placed at a DOC work camp in August 2005. Although not specifically stated, the suggestion in the complaint is that a work camp assignment is desirable because inmates can earn extra good time credits toward their sentence.

In January 2007, work camp case worker David Boulanger

---

[1] The defendants report that defendant Officer Turner is no longer employed by Corrections Corporation of America ("CCA"), the company that owned the Oklahoma prison. Although the defendants offer arguments in favor of dismissing the claims against Turner, Turner has not yet been served, is not represented, and is not formally a party to either of the motions to dismiss.

imposed a "sanction" upon Souliere for violating the camp's confidentiality clause. A hearing was held on January 26, 2007, and the resulting sanction consisted of three hours of cleaning service and writing a letter of apology. Souliere states that he completed the sanction on January 28, 2007 "to the satisfaction of staff at the work camp." (Paper 5 at 7).

On January 29, 2007, Boulanger arranged for Souliere to be removed from the work camp and transported to the St. Johnsbury prison. Souliere alleges that he was not provided a hearing prior to the transfer, and was not informed of the reason for his removal. Two days later, prison case worker Mark Laliberte informed Souliere that he would be receiving an additional sanction in the form of a 60-day prison term, and that he would be returned to the work camp on March 30, 2007. Souliere contends that this second sanction was not mentioned at the January 26 sanction hearing.

Despite Laliberte's assurance, Souliere was not returned to the work camp at the end of March 2007. When he asked for an explanation, he was allegedly told that there was a paperwork "snafu" and that his return to the work camp was imminent. Laliberte subsequently informed him, however,

that he could not complete the work camp program in the time remaining on his sentence. Souliere complains that the failure to return him to the work camp violated his due process rights.

On May 22, 2007, the DOC assigned Souliere to a privately-owned prison facility in Sayre, Oklahoma. While at the Oklahoma facility, he was allegedly injured when a correctional officer, defendant Officer Turner, snapped him three times with a towel. Although Souliere had no desire to report the incident, he was informed by another correctional officer that "it was mandatory for him to go to the medical unit and that [he] was also required to file a 5-1c incident report form reporting the assault." (Paper 5 at 12).

After he filed the assault report, Souliere was allegedly labeled a "rat" by prison officials and staff. Shortly thereafter, he was the victim of various retaliatory acts. These acts included having objects thrown at him, theft of his personal property, and assaults by fellow inmates.

Souliere is suing a group of DOC defendants for refusing to return him to the work camp and for failing to

protect him from harm during his time in Oklahoma. He is also suing Officer Turner, Turner's employer (CCA), CCA's president, and the warden of the CCA facility, Fred Figueroa. For relief, Souliere seeks a declaratory judgment, injunctive relief and damages.

## Discussion

Currently pending before the Court are two motions to dismiss. The first pertains to events that took place in Vermont,[2] while the second addresses the alleged events in Oklahoma. As noted above, on a motion to dismiss the Court must accept as true the factual allegations in the complaint and must draw all inferences in the plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). To survive dismissal, a complaint must plead enough facts to be plausible on its face. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). Pleadings drafted by a *pro se* party should be liberally construed. Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006).

I. Vermont-Related Claims

---

[2] This motion was filed twice (Papers 12 and 25) because the certificate of service on the first filing did not reflect service upon the plaintiff.

5

With respect to the events that occurred in Vermont, Souliere alleges that his removal from the work camp and subsequent transfer out of state violated his due process rights. He also alleges a double jeopardy violation. In their motion to dismiss, the defendants contend that Souliere's due process claim must fail because he had no liberty interest in remaining at the work camp, and no right to earn work camp good time. They also argue, appropriately, that double jeopardy has no application in the context of a prison disciplinary proceeding. See Porter v. Coughlin, 421 F.3d 141, 146-50 (2d Cir. 2005).

To successfully state a claim for denial of due process, a plaintiff must show that he 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. See Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); Hynes v. Squillance, 143 F.3d 653, 658 (2d Cir. 1998). In Sandin v. Conner, 515 U.S. 472, 484 (1995), the U.S. Supreme Court ruled that a prisoner's liberty interests are limited to freedom from restraints imposing an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The defendants argue that Souliere's removal from the work camp and placement back in a general prison setting did not rise to the level of an atypical and significant hardship under Sandin. The Court agrees. Souliere clearly preferred placement in the work camp program. This does not mean, however, that he had a due process right to remain there. When he was removed from the work camp, he was placed in an ordinary prison setting that was well within "the range of confinement to be normally expected." Id. at 479; cf. Lee v. Governor of State of New York, 87 F.3d 55, 58 (2d Cir. 1996) (inmates denied access to release program "will simply continue in the regular prison program until the end of their sentences, as do many other inmates"). Moreover, Vermont law grants the DOC Commissioner complete discretion over the place of an inmate's confinement. 28 V.S.A. § 701(b). Accordingly, the Court should find that Souliere had no liberty interest in remaining at the work camp.[3]

Souliere further contends that he had a protected

---

[3] This same analysis applies to the extent that Souliere is claiming that his transfer to Oklahoma without a hearing denied him his due process rights. See Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005) (Due Process Clause does not protect prisoner against transfer from one institution to another); 28 V.S.A. §§ 102(c)(20), 701(b).

7

interest in earning work camp good time.  Under Vermont's work camp statute, the awarding of good time credits is entirely discretionary.  28 V.S.A. § 811.  The Second Circuit has clearly held that while inmates have a liberty interest in credits already earned, they have no such interest in the opportunity to earn future credits when eligibility for such credits is discretionary.  <u>Abed v. Armstrong</u>, 209 F.3d 63, 67 (2d Cir. 2000).  I therefore recommend that the defendants' motion to dismiss Souliere's due process claims be GRANTED, and that all claims relating to his removal from the work camp and subsequent imprisonment be DISMISSED.

II.  <u>Oklahoma-Related Claims</u>

The defendants' second motion to dismiss addresses events that allegedly occurred at the Oklahoma facility.  Souliere blames his placement in Oklahoma on the DOC defendants responsible for removing him from the work camp.  He also claims that DOC officials failed to protect him from harm.  Other defendants in the Oklahoma allegations include CCA, CCA president John Ferguson, prison warden Fred Figueroa, and Officer Turner.

    A.  Official Capacity Immunity

The defendants first argue that all DOC defendants sued in their official capacities, as well as the DOC itself, are protected from damages claims by sovereign immunity. Because of Vermont's sovereign immunity, the Eleventh Amendment prohibits damages claims in federal court brought by citizens against the State and its agencies, absent a waiver of immunity and consent to suit by the State or a valid abrogation of constitutional immunity by Congress. See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984). The Eleventh Amendment also bars claims against State employees sued in their official capacities. See Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2002); Al-Jundi v. Estate of Rockefeller, 885 F.3d 1060, 1065 (2d Cir. 1989).

Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that immunity by Congress. Indeed, the Vermont legislature has preserved the State's immunity under the Eleventh Amendment. See 12 V.S.A. § 5601(g). Accordingly, Souliere's claims against the DOC, and against the individual DOC defendants in their official capacities, should be DISMISSED.

9

B.  Injunctive Relief

In addition to damages, Souliere seeks injunctive relief in the form of an order barring further retaliation "while the plaintiff is in the care or custody of [CCA]." (Paper 5 at 18).  He also asks the Court to award relief connected to his due process claims, which relief should be denied for the reasons set forth above.

A suit that seeks prospective injunctive relief against officials acting in their official capacities is not generally barred by the Eleventh Amendment.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Ex Parte Young, 209 U.S. 123, 159-60 (1980).  However, when the relief sought pertains to a particular prison facility and the inmate has been transferred from that facility, the transfer usually bars the claim as moot.  See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996).  This general rule applies here, as the docket indicates that Souliere is now back in Vermont and the defendants report that he was released from prison in April 2008.  (Paper 15 at 8 n.10). Because Souliere is no longer incarcerated, his alleged mistreatment in Oklahoma is unlikely to be repeated, and his request for an order barring future retaliation is moot.

C. Personal Involvement

With respect to individual capacity liability, the movants argue that they were not personally involved in any allegedly unconstitutional conduct. Personal involvement is required for an award of damages under § 1983. Moffit v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

The complaint alleges that Officer Turner acted on his own. (Paper 5 at 11) (Turner admitted fault for the disruption). Subsequent acts of retaliation arising out of the incident report were never communicated to either prison officials or Vermont DOC personnel. Id. at 14 ("The plaintiff could not report the assaults nor the robberies perpetrated upon him for the obvious reasons of further reprisal and retaliation from [prison] staff . . . ."); id. (stating that Souliere's transfer shortly after Turner's alleged assault deprived him of the opportunity to inform his Vermont state monitor). It is, therefore, difficult to discern how any of the named defendants, with the exception of Officer Turner, could have been involved to the extent required under § 1983.

Insofar as Souliere is suing the defendants in their

capacities as supervisors, a lack of direct personal involvement does not necessarily put an immediate end to his claim. Courts have long held that although "*respondeat superior* cannot form the basis for a § 1983 claim," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[4]

---

[4] Supervisory defendants in this case appear to include both DOC and CCA personnel. Claims against CCA supervisors have been analyzed under the same § 1983 standard as state employees. See, e.g., Webb v. Corr. Corp. of America, 2008 WL 3554445, at *3-*4 (S.D. Ga. July 9, 2008); Means v. Lambert, 2007 WL 4591251, at *4 (W.D. Okla.

Again, there is no indication of direct involvement by the movants. Nor does the plaintiff allege that they had knowledge of unconstitutional conduct. Accordingly, it cannot be claimed that they failed to take proper remedial action, or that they were deliberately indifferent after being notified of wrongdoing. There is no suggestion that any of the harm was the result of a wrongful policy or custom, and no allegation of grossly negligent supervision. Finally, to the extent that Souliere is claiming that DOC officials failed to properly supervise the activities of CCA officials, it has been held that CCA employees are not subordinates of state correctional officials. Means v. Lambert, 2008 WL 281551, at *5 (W.D. Okla. Jan. 31, 2008) (because state DOC and CCA were "related by contract rather than employment . . . CCA personnel cannot be considered 'subordinates' of the [state DOC's] employees" as a matter of law). There is, therefore, no basis for a claim of supervisory liability against any of the movants under § 1983. All claims against these defendants in their individual capacities should, therefore, be DISMISSED.

D. CCA Liability

---

Dec. 28, 2007); Cole v. Corr. Corp. of America, 2007 WL 2248169, at *5 (W.D. Okla. Aug. 2, 2007).

Although a private corporation, CCA is itself protected from *respondeat superior* liability in a suit brought pursuant to § 1983 "unless the plaintiff proves that 'action pursuant to official ... policy of some nature caused a constitutional tort.'" Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990) (quoting Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 691, (1978)); Vega v. Fox, 2006 WL 397941, at *5 (S.D.N.Y. Feb. 21, 2006).[5] In this case, Officer Turner's isolated action clearly cannot be attributed to CCA. Indeed, the complaint makes clear that at least one prison administrator was openly "appalled" by Turner's behavior. (Paper 5 at 13.) On the issue of retaliation, the complaint alleges that "unit officers" allowed other inmates to steal from Souliere and, on one occasion, enter his cell and attack him. Id. at 14. There is no suggestion, however, that CCA as a

---

[5] It is arguable that CCA is more than a mere private corporation, since it is in the business of housing prisoners on behalf of the State of Vermont. Indeed, it has been held that a private corporation performing the traditional state function of operating a prison acts under the color of state law for the purposes of § 1983. See Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996). Nonetheless, the plaintiff must still prove that his injury was caused by an action taken pursuant to an official policy or custom. Monell, 436 U.S. at 691.

14

corporation developed a policy allowing such acts. I therefore recommend that the claims brought against CCA be DISMISSED.

    E.  Officer Turner

As noted previously, Officer Turner has not yet been served and has not appeared in this case. The defendants argue that the claims against him should nonetheless be dismissed, submitting that Souliere's allegation "that he was snapped on his pants with a towel" does not constitute cruel and unusual punishment. The defendants also suggest that the claim against Turner has been brought in the wrong venue. (Paper 14 at 1 n.1).

The Court need not offer an opinion at this time as to the strength of Souliere's Eighth Amendment claim. Because I am recommending that all claims against DOC defendants be dismissed, venue is the more pressing question. Cf. Joyner v. Reno, 466 F. Supp. 2d 31, 40 (D.D.C. 2006) (prior to determining proper venue, court should not reach merits). The events involving Officer Turner all took place in Oklahoma, with no apparent connection to the State of Vermont. Accordingly, under 28 U.S.C. § 1391(b), venue is more appropriate in Oklahoma. I therefore recommend that

15

any claims against Officer Turner be DISMISSED without prejudice, subject to re-filing in a more appropriate jurisdiction. See Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993) (whether to dismiss or transfer due to improper venue lies court's discretion).

III. State Law Claims

Giving Souliere's *pro se* complaint the required liberal reading, it is conceivable that he is bringing state law claims in addition to his constitutional claims. If the Court adopts this Report and Recommendation, all federal claims against the defendants will have been dismissed. In that event, I further recommend that the Court decline to take supplemental jurisdiction over any state law claims. 28 U.S.C. § 1367(c); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

IV. Leave to Amend

The final consideration for the Court is whether Souliere should be granted leave to amend. A court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading . . . gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000). However, it is

"well established that leave to amend a complaint need not be granted when amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003).

Here, additional facts would not bolster Souliere's due process claim, since that claim fails as a matter of law. For his claims regarding events in Oklahoma, Souliere would have to allege that the defendants allowed or participated in physical abuse and stealing. The complaint provides no support for such a claim, and the Court should find that amended allegations to this effect would be fanciful. Indeed, Souliere has made no effort to counter the defendants' arguments on these claims. I therefore recommend that the Court decline to grant leave to amend in this case.

## Conclusion

For the reasons set forth above, I recommend that the defendants' unopposed motions to dismiss (Papers 12, 15 and 25) be GRANTED, and that all claims against defendants Robert Hofmann, Vermont Department of Corrections, David Boulanger, Mark Laliberte, Kevin Oddy, Fred Figueroa, Corrections Corporation of America and John Ferguson be DISMISSED. I further recommend that any claims brought

against defendant Officer Turner be DISMISSED without prejudice.

Dated at Burlington, in the District of Vermont, this 12th day of January, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).